DENNIS J. MOLLIHAN, Plaintiff-Appellant, *v.* JOSEPH STEPHANY, Defendant.—(STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Garnishee-Appellee.)

First District (5th Division)   No. 76-1262

Opinion filed September 2, 1977.

Jares & Burke, of Chicago, for appellant.

John T. Kennedy, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from the judgment following a bench trial denying plaintiff, a judgment creditor, relief under an automobile insurance policy issued by State Farm Automobile Insurance Company (garnishee) to defendant, the judgment debtor.

Initially, plaintiff filed a complaint seeking damages because of alleged negligence of defendant when the vehicle he was driving collided with the rear of plaintiff's automobile. Defendant was personally served with summons but failed to appear, and a default judgment in the amount of $5,500 was entered against him. Subsequently, an affidavit for garnishment was filed by plaintiff, seeking to reach a policy of insurance issued by garnishee on defendant's automobile. Summary judgment was granted in favor of plaintiff, which was reversed on appeal in *Mollihan v. Stephany* (1975), 35 Ill. App. 3d 101, 340 N.E.2d 627. Thereafter, a trial of the issues was had, resulting in a judgment for garnishee.

In this appeal, plaintiff contends (1) the provisions of the safety responsibility act (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—101 *et seq.*) are applicable and preclude the garnishee from rescinding its policy based

upon alleged misrepresentations by its insured; (2) the application for insurance was not made a part of the policy and, as a result, the alleged misrepresentation in it was not available as a defense to garnishee; and (3) the failure of the trial court to find that garnishee waived and abandoned its decision to rescind the policy was against the manifest weight of the evidence.

It appears that defendant submitted an application for automobile insurance on December 4, 1970, to Otto Scheiner, an agent of garnishee in Evergreen Park, a suburb of Chicago. The application contained a question which defendant answered negatively asking whether a license to drive had been suspended, revoked or refused for the named insured or any member of his household for the prior three years. In fact, there had been a conviction in 1969 of defendant's wife for driving under the influence of intoxicating liquors, resulting in the revocation of her license. Scheiner stated that the conviction was unknown to him and, because there otherwise appeared to be nothing objectionable in the application, he accepted it—thereby placing into effect or "binding" the insurance as of the application date. In the usual course of business, he forwarded the application that same day to garnishee's home office in Bloomington, Illinois.

Six days later, on December 10, the collison between the two cars of plaintiff and defendant occurred, and the following day garnishee received notice of the collision. Thereafter, William Wisnasky, a claims superintendent for garnishee, paid defendant for the damage to his car on December 23, 1970, after he had verified through an information storage computer (ROMAC) that defendant's policy was in full force. Prior thereto, he had obtained an estimate of the damage to defendant's car and had received information concerning the special damages claimed by plaintiff.

Robert L. Smith, garnishee's automobile underwriting supervisor in the Bloomington office, testified his office received defendant's application for insurance on December 7 and that, as a normal underwriting procedure abstracts of driving records are requested of the Secretary of State which, when received on December 16, disclosed the revocation in 1969 of the driver's license of defendant's wife. An office date stamp indicated that the application was not in the underwriting file on December 18 but that sometime after that date Smith examined the application and noted that the question concerning driver's license revocations was answered negatively. He considered this to be a material misrepresentation and, on December 23, 1970, he started the process of rescission which resulted in the letter of December 28, informing defendant that the policy was being rescinded as of its issuing date because of the application misrepresentation as to his wife's license

revocation. Smith further testified that after such a letter is mailed, the file is then processed through the accounting department into the computer which, in this case, occurred on December 28.

Thereafter, on October 12, 1973, defendant was served with an alias summons in the case of *Mollihan v. Stephany* and, on November 20, he delivered the summons and complaint to Scheiner who, on the same date, delivered them to garnishee's claims office. Twenty-two days later, on December 12, 1973, Wisnasky, claims superintendent of garnishee, sent a registered letter to defendant which enclosed the summons and complaint and stated that, as he had been previously notified, his policy had been rescinded and that it was his personal responsibility to defend the lawsuit. The next day, Wisnasky personally delivered a copy of the letter to defendant's wife. Wisnasky stated that the delay from November 20 until the December 12 letter was sent to defendant resulted because it took from one to two weeks for the claims office to receive the file from the underwriting office in Bloomington.

Defendant testified that when he received the summons and complaint from garnishee he saw a lawyer who charged a fee and said he would take care of defendant. Defendant did not remember whether he left the complaint or summons with the lawyer. In any event, defendant did not go to court at any time in 1973.

The lawyer with whom defendant discussed the matter testified that when defendant came to see him he brought the summons and complaint, together with a note that the matter had been set before Judge Iseberg on December 18 in the Civic Center. Although he was to represent defendant, he did not attend any of the hearings or pretrials but did have conversations with Wisnasky, who told him that the policy had been rescinded.

A default order was entered on January 31, 1974, and the ex parte judgment was entered against defendant on February 5, 1974.

OPINION

Plaintiff first contends the Illinois safety responsibility act (the Act) (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—101 *et seq.*) precludes garnishee from rescinding its policy because of a misrepresentation by its insured.

Pertinent parts of the Act here are: section 7A—304 (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—304), which requires proof of financial responsibility after a driver's license is revoked by the Secretary of State; section 7A—314 (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—314), which provides three methods of giving proof of financial responsibility when it is required—the first of which is "[a] certificate of insurance as provided in Section 7A—315 * * * of this Act"; and section 7A—315 (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—315) then provides that proof of financial responsibility may

be made by filing with the Secretary of State the written certificate of an insurance carrier "certifying that it has issued to or for the benefit of the person furnishing such proof and named as the insured in a motor vehicle liability policy, or policies or in certain events an operator's policy meeting the requirements of this Act and that said policy or policies are then in full force and effect."

Plaintiff argues that garnishee's liability under the motor vehicle policy issued here became absolute when the automobile accident in question occurred by virtue of section 7A—317(f)(1) and, thus, it should not have been permitted to avoid coverage because of a misrepresentation in the application for insurance. That section provides:

"(f) Provisions incorporated in policy.— Every motor vehicle liability policy is subject to the following provisions which need not be contained therein:

1. The liability of the insurance carrier under any such policy shall become absolute whenever loss or damage covered by the policy occurs and the satisfaction by the insured of a final judgment for such loss or damage shall not be a condition precedent to the right or obligation of the carrier to make payment on account of such loss or damage." Ill. Rev. Stat. 1969, ch. 95½, par. 7A—317(f)(1).

We note, however, that liability does not become absolute under section 7A—317(f)(1) (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—317(f)(1)) until it is certified under section 7A—315 (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—315). This appears clear because the term "motor vehicle policy," as used in section 7A—317(f)(1) is defined in section 7A—317(a) (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—317(a)), as follows:

"A 'motor vehicle liability policy', as that term is used in this Act, means an 'owner's policy' * * * of liability insurance, *certified as provided in Section 7A—315* * * * as proof of financial responsibility for the future, and issued, * * * by an insurance carrier duly authorized to transact business in this State, to or for the benefit of the person named therein as insured." (Emphasis added.) Ill. Rev. Stat. 1969, ch. 95½, par. 7A—317(a).

In *McCann v. Continental Casualty Co.* (1956), 8 Ill. 2d 476, 134 N.E.2d 302, our supreme court held that an insurance policy incorporating the provisions of the State's financial responsibility act, only when applicable and not unqualifiedly, did not extend liability of the insured to situations not covered by the policy. *McCann* was later discussed in *Stollery Bros., Inc. v. Inter-Insurance Exchange* (1957), 15 Ill. App. 2d 179, 145 N.E.2d 768, where it was held that the financial responsibility clause in an insurance policy was intended to apply only when the policy was issued to comply with the compulsory requirement of the Act. In other words, only in a situation involving an unsatisfed judgment where, to again

obtain a license to drive, the driver was required to submit evidence of financial responsibility. The *Stollery* court concluded that "[n]either in the McCann case nor in the instant case was the policy issued or offered for that purpose." 15 Ill. App. 2d 179, 182-83, 145 N.E.2d 768, 770.

It is our function to construe a policy of insurance as it is written (*Porterfield v. Truck Insurance Exchange* (1960), 28 Ill. App. 2d 195, 171 N.E.2d 108) and, where its terms are clear and unambiguous, we must give effect to the intent of the parties to the contract in accordance with the clear expression of the agreement (*McCann*). It is in the light of these tenets that we have examined the record here, which includes the policy of insurance in question, and we find no indication that it was certified to the Secretary of State as proof of financial responsibility. The policy contains the following clause:

> "*When certified* as proof of future financial responsibility under any motor vehicle financial responsibility law and while such proof is required during the policy period, this policy shall comply with such law *if applicable*, to the extent of the coverage and limits required thereby; but not in excess of the limits of liability stated in this policy." (Emphasis added.)

However, a similar clause was held not to be a certification under the act in *Mid-Century Insurance Co. v. Safeco Insurance Co. of America* (1972), 7 Ill. App. 3d 408, 287 N.E.2d 529.

*Safeway Insurance Co. v. Harvey* (1976), 36 Ill. App. 3d 388, 343 N.E.2d 679, cited by plaintiff, is not controlling. The opinion states that the policy in that case contained a financial responsibility endorsement the language of which was not included in the opinion but which the court stated was a voluntary adoption of the requirements of the Act by the insurer. No such endorsement is contained in the policy here.

In the light of the foregoing, we find that there was no certification of the policy in question and, because garnishee's liability did not become absolute as provided in section 7A—317(f)(1) of the Act, the misrepresentation defense was available to it.

■■ Plaintiff next contends that garnishee is precluded by section 154 of the Insurance Code (Ill. Rev. Stat. 1969, ch. 73, par. 766) from avoiding the policy because the application of insurance containing the misrepresentation was not made a part of the policy. We note, however, that the statute in question provides that the misrepresentation must either be in the application for insurance with a copy thereof attached to or endorsed on the policy, or that the misrepresentation be stated in the policy itself. The applicable statute in pertinent part provides as follows:

> "No misrepresentation * * * made by the insured or in his behalf in the negotiation for a policy of insurance, * * * shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, * * * shall have been stated in the policy or

endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof.* * *" (Ill. Rev. Stat. 1969, ch. 73, par. 766.) We note that paragraph 3(b) of the declarations in defendant's policy states: "No license to drive or registration has been suspended, revoked or refused for the named insured or any member of his household within the past three years." The policy also states that garnishee entered into the agreement "in reliance upon the statements in the declaration * * *." We believe that this declaration sufficiently complied with the requirement of section 154 of the Insurance Code and, consequently, it does not preclude the avoidance of the policy. See *Government Employees Insurance Co. v. Dennis* (1965), 65 Ill. App. 2d 365, 212 N.E.2d 759, in which an application containing a misrepresentation of vehicle ownership was not made a part of the policy. The court held the defense was available to the insurer where a declaration in the policy also stated that applicant was the owner of the vehicle.

The cases cited by plaintiff, *Farmers Automobile Insurance Association v. Pursley* (1971), 130 Ill. App. 2d 980, 267 N.E.2d 734, and *Freberg v. Coronet Insurance Co.* (1968), 96 Ill. App. 2d 39, 238 N.E.2d 174, are distinguishable, since there is no indication in either case that matters misrepresented in the applications were also stated in the policy declarations. Another case cited by plaintiff, *Loving v. Allstate Insurance Co.* (1958), 17 Ill. App. 2d 230, 149 N.E.2d 641, actually is in support of our conclusion, as the court held there that, although the application containing a material misrepresentation (the denial of a prior refusal of insurance) was not attached to or endorsed on the policy, the misrepresentation was available as a defense because there was also a declaration in the policy negating any prior refusal of insurance.

Lastly, plaintiff contends that "[o]ne seeking to rescind a transaction on the ground of misrepresentation must elect to do so promptly after learning of the misrepresentation, must announce his purpose and must adhere to it or it constitutes a waiver of the rescission." He points out that garnishee's underwriter, Smith, made a decision to rescind on December 16, 1970, but did not notify defendant until his letter of December 28, 1970; that in the interim garnishee's claimsman, Wisnasky, paid defendant's collision loss on December 23; and that its agent, Scheiner, accepted the summons and complaint from defendant on November 20, 1973, and they were not returned to him until December 12, 1973. He argues from those facts that garnishee did not adhere "to its purpose of rescinding its policy" and, thus, that it waived the rescission. Plaintiff does not contest the materiality of the misrepresentation, and he does not contend there is any ambiguity in the application or the policy. He relies solely on the facts as outlined above in contending that garnishee waived its rescission.

■■■ Waiver is an equitable principle invoked to further the interests of justice whenever a party initially relinquishes a known right or acts in such manner as to warrant an inference of such relinquishment. (*National Bank of Albany Park v. Newberg* (1972), 7 Ill. App. 3d 859, 289 N.E.2d 197.) In the insurance field, waiver is generally not "expressed or intentional" but usually is implied from the conduct of the insurer or its agents. *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 323 N.E.2d 521; see also 22 Ill. L. & Prac. *Insurance* §358 (1956).

■■ Plaintiff does not argue there was an intentional waiver here, nor do we find that there was. He does urge, however, that garnishee's conduct as outlined above amounts to an implied waiver. We disagree. We do not believe that waiver should be implied from the fact that garnishee's agent, Scheiner, received the complaint and summons from defendant after its decision to rescind. When Scheiner received the summons, he said that he would give it to the claims department and told defendant, "What they would do with it would be up to them." It appears that Scheiner considered himself only a conduit, as he informed defendant that the decision with respect to the summons was to be made by others in the company. Moreover, the return of the documents to defendant serves to negate any implication of waiver by Scheiner's receipt of them. The payment to defendant of his automobile damage was made by garnishee's claimsman when he had no knowledge that there had been a decision to rescind the policy. His lack of knowledge in this regard resulted from the fact that information regarding the rescission had not been given the computer. The delay from December 14, 1970, when information was received from the Secretary of State as to the revocation of the license of defendant's wife until the letter of rescission was sent on December 28, 1970, is not so unreasonable as to imply a waiver—particularly when it is not claimed here nor indicated from the record that defendant was prejudiced in any manner.

■■ Although strong proof is not required to establish a waiver of a policy defense, such facts must be shown as would make it unjust, inequitable or unconscionable to allow the defense to be interposed. (*Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 616, 313 N.E.2d 673; *O'Brien v. Country Mutual Insurance Co.* (1969), 105 Ill. App. 2d 21, 24, 245 N.E.2d 30.) No such facts are indicated here.

In view of the foregoing, we reject defendant's contention that garnishee waived its decision to rescind because of the misrepresentation in the insurance application.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.